Hately v. Myers.

96    217
c113  1423

## John C. Hately et al. v. M. C. Myers.
## Same v. Same.

1. INJUNCTIONS—*Legal Effect of a Denial of Motion to Dissolve.*— The denial of a motion to dissolve an injunction is the same in legal effect as an order granting an injunction.

2. LANDLORD AND TENANT—*Landlord's Option Where the Tenant Holds Over.*—Where a tenant holds over after an indefinite term of years the landlord may consider him a tenant and he will be understood as doing so unless he proceeds to eject him at once.

3. SAME—*Effect of Receiving Rent from a Tenant Holding Over.*— Where a landlord suffers a tenant to remain in possession after the expiration of his term and receives rent from him, or by any other act acknowledges him as a tenant, a new tenancy springs up regulated by the covenants and stipulations entered into by the parties at the creation of the original term, so far as they are applicable to the altered nature of the tenancy.

4. SAME—*Where the Tenant Remains in Possession After the Expiration of a Term of Years.*—Where a tenant remains in possession after the expiration of a term of years, with the consent of the landlord, the law will imply a new tenancy without a definite period for its termination, and if either party desires to terminate it, good faith requires that reasonable notice should be given.

5. EQUITY—*When It Will Protect a Tenant.*—A court of equity will protect a tenant in the enjoyment of premises of which he is in the rightful possession and entitled to remain in such possession until duly notified as required by the statute.

**Bill for Injunction.**—Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1901. Affirmed. Opinion filed July 23, 1901.

BULKLEY, GRAY & MOORE, attorneys for appellants.

S. W. SWABEY, attorney for appellee.

MR. PRESIDING JUSTICE SHEPARD delivered the opinion of the court.

These two appeals, of the same entitling and involving the same questions (with the exception of a motion to dismiss one of them), will be considered together. One is an appeal from an order overruling a motion by appellants (defendants below) made on the face of the bill, to dissolve a preliminary injunction granted against them in appellee's favor, and the other is from the order granting the same injunction. A motion has been interposed by appellee to dismiss the appeal from the order denying the motion to dissolve the injunction, on the ground that this court is without jurisdiction to entertain an appeal from an order denying a motion to dissolve an injunction. It is not questioned that this court has jurisdiction to entertain appeals from orders granting injunctions. Rev. Stat. (Hurd's Ed.,

1899) Ch. 22, Sec. 52, concerning appeals from interlocutory orders.

The denial of a motion to dissolve an injunction is the same in legal effect as an order granting an injunction. The motion to dismiss the appeal on the ground stated can not be allowed.

In all other respects, identically the same questions are presented by each appeal.

Briefly stated, the bill sets forth a contract of lease in writing whereby appellants demised to appellee " the exclusive privilege and use of billiard rooms and cigar stands, the exclusive sale of smokers' articles, newspapers, books, confectionery, flowers and theatre tickets in the Chicago Beach Hotel," for the term of one year, from May 1, 1899, to April 30, 1900, at a fixed rental of $1,380, payable in monthly installments of $115 each, on the last day of each month. By the terms of the lease appellee waived demand for the possession of the premises, and covenanted that at the expiration of the time mentioned, peaceable possession of the premises should be given to the lessors.

As a further part of the leasing the lessors covenanted to " furnish sufficient light and heat in the billiard room and to keep the floor and windows of the same in a cleanly condition without cost to appellee." The bill also alleges that the appellee duly complied with all the conditions and requirements of said lease, on his part to be performed, and that at the expiration of the time mentioned in the lease, to wit, on April 30, 1900, the appellee held over and continued to occupy the premises in the same manner and for the same purposes and at the same annual rental as was specified in said lease, with the assent and approbation of the appellants, and paid to appellants the same rents at the same times and in the same manner as was contracted for in and by said written lease, and that said appellants received said rents and recognized appellee as its tenant and as being entitled to exercise and carry on the business mentioned in said contract in said Chicago Beach Hotel, and that appellee is still exercising and carrying on said busi-

ness at the said Chicago Beach Hotel, and has fully paid all rents contracted for and has fully performed each and all of the conditions mentioned in said contract to be by him performed, and it is averred that the appellee "is, by reason of said written contract and by reason of his having held over with the assent and approbation of said defendants and by reason of their receipt of the rents and their recognition of him as their tenant, become the tenant of said defendants from year to year, and that he is entitled to have possession of said premises and to carry on said business and to exercise said privileges in and about said hotel as such tenant until such tenancy is legally terminated." The bill then proceeds to set forth certain demands and threats made by appellants and their agents, on and about April 15, 1901, of an alleged grossly inequitable nature, showing an intention by the appellants to dispossess appellee from said premises and to remove him and his property therefrom by force, unless he would comply with their demands on or before the thirtieth day of April, 1901. The bill was for an injunction against appellants making such forcible dispossession of appellee, and the injunction was granted as prayed.

The main question, concisely stated, is as to whether the case as made by the bill constitutes a tenancy from year to year requiring sixty days notice to terminate, or is a tenancy for one year requiring no notice to terminate. Our statute, sections 5 and 12, Chap. 80, entitled Landlord and Tenant, are as follows:

" 5. In all cases of tenancy from year to year, sixty days notice, in writing, shall be sufficient to terminate the tenancy at the end of the year. The notice may be given at any time within four months preceding the last sixty days of the year.",

" 12. When the tenancy is for a certain period, and the term expires by the terms of the lease, the tenant is then bound to surrender possession, and no notice to quit or demand of possession is necessary."

What, then, constitutes a tenancy from year to year, and what kind of a tenancy is shown by the bill to exist in this case?

" A tenant from year to year is one who holds under a demise (express or implied) for a term which may be terminated at the end of the first or any subsequent year of the tenancy, either by the landlord or the tenant, by a regular notice to quit. He is substantially a tenant at will, except that such will can not be determined by either party without due notice to quit. If no such notice be given, the tenancy will continue from year to year, for any number of years until surrendered, or extinguished by the statute of limitations, or the lessor's title ceases." 1 Woodfall's Landlord and Tenant, 219.

" If the tenant continues to hold over, after his term (a definite term of years) has run out, the landlord may, if he chooses, consider him a tenant, and he is, in fact, understood to do so unless he proceeds to eject him at once. If the landlord suffers him to remain, and receives rent from him, or by any other act acknowledges him still as tenant, a new tenancy springs up, *usually from year to year* (italics are ours), regulated by the same covenants and stipulations entered into between the parties at the creation of the original term in so far as they are applicable to the altered nature of the tenancy." Bouvier's Law Dictionary (Rowle's Ed. 1897), under title of Landlord and Tenant.

It is said in 4 Kent's Commentaries (12th Ed.) 112:

" If the tenant holds over by consent given, either expressly or constructively, after the determination of a lease for years, it is held to be evidence of a new contract, without any definite period, and is construed to be a tenancy from year to year."

In Moore's Treatise (Ill.), Sec. 1619, it is stated, on the authority of Illinois cases cited, as follows:

" Since, where a tenant for one or more years holds over after the expiration of his term, without any express agreement, with the assent of the landlord, it has been held that the law implies that he holds the premises upon the former terms for another year, it has been supposed that he may be turned out of the possession without any notice at the end of any year he holds over, because his term, which the law fixes for him, then expires, and he is supposed to know without notice that he can not continue in possession longer unless he has permission from his landlord. But the weight of authority seems to be in favor of requiring notice to quit in such cases, for the law really implies that the tenant

is to hold at the former terms as tenant from year to year, not simply for one year."

Recurring to 1 Woodfall's Landlord and Tenant, it is said, commencing on page 222:

"Where a tenant for a term of years holds over after the expiration of his lease he becomes a tenant on sufferance; but when he pays, or expressly agrees to pay, any subsequent rent, at the previous rate, a new tenancy from year to year is thereby created upon the same terms and conditions as those contained in the expired lease, so far as the same are applicable to and not inconsistent with a yearly tenancy."

These definitions and statements of the law are abundantly sustained by judicial decisions in cases cited in support thereof, a few of which may be reproduced.

Thus Lord Mansfield laid down the rule, in Right v. Darby, 1 Term Rep. 162:

"If there be a lease for a year, and by consent of parties the tenant continues in possession afterward, the law implies a tacit renovation of the contract. They are supposed to have renewed the old agreement, which was to hold for a year. But then it is necessary, for the sake of convenience, that if either party should be inclined to change his mind, he should give the other half a year's notice before the expiration of the next or any following year."

In Moshier v. Reding, 3 Fairfield (Me.), 478, it is said:

"But where the tenant holds over after his term has expired and the lessor assents to it (and even his silence may be construed into an acquiescence or assent), it will be considered as a tacit renewal of the lease, at least for the following year, and the lessee will become tenant from year to year, and can not be dispossessed without regular notice. In this, the civil and common law both concur. 4 Kent's Com. 110, 114. If the lessor receive rent or the lessee be permitted to continue on the land for a twelve-month, a tenancy from year to year will then be implied."

In Hall v. Myers, 43 Md. 446, the court says:

"Without reviewing the many cases in which the question of tenancy has been considered, it is sufficient to say that it is now well settled if the tenant remains in possession after the expiration of a term of years, with the consent of the landlord, the law will imply a new renting without a definite

Hately v. Myers.

period for its termination; and in such cases, if either party desires to terminate the tenancy, good faith requires that reasonable notice be given."

And so, Mr. Justice Cassoday, speaking for the court, in Brown v. Kayser, 60 Wis. 1, says, in summarizing the doctrine in support of which he cites a great many cases:

" Beyond question, it was the well settled rule of the common law, that where there is a lease for any specified period at a stipulated annual rent, and the tenant holds over after the expiration of his term, with the assent of the landlord, who continues to receive rent at the stipulated rate, the law implies a tenancy from year to year. And this was so, notwithstanding the annual rent specified was payable monthly or quarterly.  *  *  *  Such holding over and payment and acceptance of rent, without objection, must be regarded as an election of the landlord to consider such tenancy as one from year to year."

It is true there is in Wisconsin, a statute, such as does not exist in Illinois, that if a tenant for a year or more shall hold over after the expiration of his term, he may, at the election of his landlord, be considered a tenant from year to year, upon the terms of the original lease; but, as held in the case last referred to, such statute is but declaratory and in confirmation of the common law.

Of course, the common law as to tenancies from year to year and notice to quit, is in force in Illinois, except in so far as it has been modified by statute, and we have no knowledge of any statute of this State modifying the common law in respect of anything in this connection, other than as to length of notice as already quoted.

It would seem that we have referred to sufficient authorities to show what the common law rule is generally held to be, as to what will constitute a tenancy from year to year, and the manner of creating it, and as to the requirement of notice to terminate it, though, if not, an examination of those we have cited will furnish a wealth of others. The rule in Illinois is the same.

In Prickett v. Ritter, 16 Ill. 96, the common law rule, as stated, is expressly sustained in the following language:

" Where a party enters upon premises under a lease for a

year or years, and holds over, it will be construed as an implied agreement for a year, and from year to year. Where the lease is for any period less than a year, the holding will be construed as being for another term of the same length of time; and in all cases as upon the same terms, as to the amount of rent and times of payment, unless there be some act of one or both of the parties to rebut such an implication."

And that being a case where the holding over was for a considerable period after the determination of the original lease for one month, it was held that a month's notice was required to put an end to the tenancy.

This rule has been uniformly followed in all subsequent Illinois cases.

In Hunt v. Morton, 18 Ill. 75, where the tenant was holding over without any definite agreement, the court, speaking by Mr. Justice Caton, says:

"I shall not stop to refer to the authorities showing that a tenant from year to year is entitled to six months' notice prior to the expiration of the year in order to terminate the tenancy. They are sufficiently referred to in the case of Prickett v. Ritter, 16 Ill. 96, although that was a monthly and not a yearly tenancy. We hold such to be the law in this State, as it has been in England and most of the States of the Union."

In the case of Clinton Wire Cloth Company v. Gardner, 99 Ill. 151, the court says:

"The doctrine of implied tenancies from year to year, upon a holding over, is distinctly recognized in this State. Hunt v. Morton, 18 Ill. 75; Prickett v. Ritter, 16 Ill. 96, and other cases."

Again in Goldsborough v. Gable, 140 Ill. 269, the court says:

"Appellee having remained in possession after the expiration of the term described in the deed without any new contract with appellant in respect thereto, it was optional with appellant to treat him as a trespasser, or waive the wrong of holding over and treat him as a tenant; and by accepting the payment of a month's rent thereafter from appellee, appellant made his election and appellee became a tenant of the premises under appellant from year to year

upon the same terms, and subject to the same rent, etc., as is provided to be paid in the original deed.   Prickett v. Ritter, 16 Ill. 96; Hunt v. Morton, 18 Ill. 75; McKinney v. Peck, 28 Ill. 174; Clinton Wire Cloth Co. v. Gardner et al., 99 Id. 151; Webster v. Nichols, 104 Id. 160."

And in a subsequent appeal of the same case, reported in 152 Ill. 596, the court again says:

" If it be true that the appellant, in some conversation before the original lease expired, promised to reduce the rent, yet, it is also true, under the decision already made in this case by this court, that the payment and acceptance of rent at the old rate after the lease expired, made appellee a tenant from year to year at the old rate."

And this court, in Johnson v. Foreman, 40 Ill. App. 456, in discussing the distinction between a tenancy for a definite term of one year and a tenancy from year to year, where the relation arises out of a holding over, speaking through Mr. Presiding Justice Moran, well said:

" When one is a tenant of premises for a year, under either a written or a valid verbal lease, and the tenant and landlord come together at the end of the year, and the tenant says to the landlord that he will stay for another year, and the landlord assents to it and rent is paid at the former rate, that is leasing for one year, and does not create a tenancy from year to year.   A tenancy from year to year will be created where a tenant holds over, after the expiration of a former lease, for one or more years, and pays rent, nothing being said between the parties, no agreement as to the time he shall hold being made.   So, also, such a tenancy will be created, and against the intention of the tenant, where the tenant holds over without right after expiration of a prior term of a year, and the landlord elects to hold him as a tenant and signifies such election.   Clinton Wire Cloth Co. v. Gardner, 99 Ill. 151."

The case of Secor v. Pestana, 37 Ill. 525, cited by appellants, is in no manner opposed to the authorities we have referred to, but is simply that under the facts there shown the tenancy was one for a fixed period of one year and consequently no notice was required.

Some of the authorities cited by appellants may, in some of the expressions used, if considered alone, appear to justify

the contention of appellants' counsel, but a close considera-
tion of such of them as are entitled to much weight sustains
the views we have repeated. We are confined to a consid-
eration of the case as made by the bill, which is that of
a holding over by the tenant after the determination of a
lease for a definite term of one year, with the consent of
the landlord and the payment of rent at the old rate, but
without any new agreement as to the time of holding.
Such facts as are stated by the bill, under the almost uni-
versal rule where the common law prevails, create a tenancy
from year to year, regulated, as said by Bouvier, *supra*, by
the same covenants and stipulations entered into between
the parties at the creation of the original term, so far as
they are applicable to the altered nature of the tenancy.
And such a tenancy can only be terminated by sixty days'
notice, as required by the statute previously quoted.

The remaining question presented, is as to whether a
court of equity will protect the appellee in the enjoyment
of premises which he is, as we hold, in rightful possession
of, and may continue to retain until duly notified as
required by the statute.

The case presented by the bill is not merely the enjoin-
ing of a trespass, but from taking possession of property
and property rights to which appellants have no right,
without notice, thereby inflicting a permanent and con-
tinuing injury upon the appellee. (City of Peoria v. Johns-
ton, 56 Ill. 45.) In such a case of total lack of right by
appellants, it is immaterial whether an irreparable injury
that is incapable of measurement at law will be inflicted or
not. Consolidated Coal Co. v. Schmisseur, 135 Ill. 371. It
was, in our opinion, a clear case for the remedy that an
injunction alone would afford.

The judgment of the Superior Court is affirmed.

Mr. Justice WATERMAN took no part in the determina-
tion of this case.